### CONTINUATION IN SUPPORT OF
### <u>AN APPLICATION FOR A SEARCH WARRANT</u>

I, Sara **Choi**, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number 616-706-7246, ("the SUBJECT PHONE NUMBER"), that is stored at premises controlled by T-Mobile a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require T-Mobile to disclose to the government copies of the information further described in Attachment B.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, and have been since March 2020. I completed twelve weeks of Criminal Investigative Training and fourteen weeks of Special Agent Basic Training. Prior to my employment with the ATF, I was a public safety officer with the Kalamazoo Department of Public Safety for approximately thirteen years (eleven years as a uniformed Officer and two years as a detective). My responsibilities include the investigation of criminal violations of Titles 18 and 21 of the United States Code. I am currently assigned to the ATF Field Office in Grand Rapids, Michigan.

3. I have participated in numerous investigations involving violations of federal firearms and narcotics laws. Through these investigations, my training and experience, and conversations with other agents and law enforcement personnel, I have become familiar with the methods used by prohibited persons to possess, procure and distribute firearms. These

investigations have resulted in the arrest and conviction of criminal defendants and the seizure of firearms. I have previously been the affiant for many federal search warrants and have assisted other state and local agencies, as well as Assistant United States Attorneys, in the preparation of affidavits for search warrants.

4.	I have participated in the execution of many search warrants relative to investigations of Title 18 and Title 21 of the United States Code. Evidence seized pursuant to these search warrants includes, but is not limited to firearms, ammunition, controlled substances, drug proceeds, cellular telephones, computers, documents, and records pertaining to the manufacture, possession, and distribution of controlled substances, and proceeds derived from the sale of controlled substances. Further, I have conducted and participated in several firearms investigations that have involved illegal firearm possessors and traffickers utilizing cellular telephones to communicate about illegal firearms transactions and related activities.

5.	The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.	A conversion device, commonly known as a "switch," is a small assembly of parts that can be installed on a semi-automatic pistol to cause it to fire fully automatically with a single pull of the trigger.  According to 26 U.S.C. § 5845(b), "the term 'machinegun' means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." The same provision adds that "machinegun" also means "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun."

Under this definition, a switch itself is a "machinegun," even if it is not attached to a firearm. *See United States v. Dodson*, 519 F. App'x 344, 347–349 (6th Cir. 2013).

7. ATF is not aware of any switches having been produced before May 19, 1986. As a result, switches are governed by the Gun Control Act, 18 U.S.C. § 922(o), which prohibits the transfer or possession of a machinegun manufactured after May 19, 1986. Such machineguns may be lawfully possessed only by appropriately licensed people who have paid a required Special Occupational Tax and are authorized by the United States or a statutorily recognized subpart.

8. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 922(o) – Possession or Transfer a Machine Gun and 18 U.S.C. § 922(g)(1) – Felon in Possession of a Firearm, have been committed by ARMANDO VILLANUEVA. There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## PROBABLE CAUSE

9. According to Law enforcement records, in 2017, VILLANUEVA was convicted in the State of Michigan with Felony Weapons (Carrying concealed), which is punishable by more than one year in prison. Law enforcement records also state that, in 2019, VILLANUEVA was convicted in the State of Michigan with felony Controlled Substances (Deliver/Manufacture), Felony Weapons (Ammunition, Possession by a Felon) and Felony Police Officer (Assaulting/resisting/obstructing), all punishable by more that one year in prison.

10. VILLANUEVA's registered address is on Dickinson Street SW in Grand Rapids, Michigan.

11. On September 14, 2022, U.S. Magistrate Judge Ray Kent authorized a search warrant to extract and review the contents of a cell phone seized from VILLANUEVA during the

investigating of a shooting in Grand Rapids (1:22-mj-409). The phone number associated with that cell phone was the SUBJECT PHONE NUMBER. During a search of the phone's contents, the following evidence was located.

    a.    On December 18, 2021, VILLANUEVA created a video of himself at a gun range. The camera first shows VILLANUEVA's face before turning the camera to record himself shooting a gun (still frames below). I recognize the location as the Barry County Gun Range in Barry County, Michigan.

 

    b.    On February 24, 2022, VILLANUEVA created two videos (still frames below). The first video, recorded at 5:55:58 PM, shows VILLANUEVA shooting a fully automatic pistol from a moving vehicle in a residential area. The second video, recorded at 5:56:08 PM, shows VILLANUEVA displaying the Glock pistol equipped with a "switch" and tan magazine in his lap.



c.  On March 31, 2022, VILLANUEVA created a video that depicted him holding a Glock 27 Gen 4 .40 caliber pistol equipped with a switch. VILLANUEVA is identified on this video by his distinctive hand tattoos (still frames below). The serial number of this gun was visible; investigators determined that the gun was previously reported stolen in Kalamazoo, Michigan.



12.  Cell site data provided by T-Mobile will aid in identifying the location of the SUBJECT PHONE NUMBER at the time of the above-mentioned videos.

13. In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

14. Based on my training and experience, I know that T-Mobile can collect cell-site data about the SUBJECT PHONE NUMBER. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

15. Based on my training and experience, I know that wireless providers such as T-Mobile typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such

as T-Mobile typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE NUMBER's user or users and may assist in the identification of co-conspirators.

## AUTHORIZATION REQUEST

16. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

17. I further request that the Court direct T-Mobile to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on T-Mobile who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.